IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STACEY WALKER TALBERT, on her own behalf as Administrator for the Estate of MICHAEL WALKER, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 03 C 7571 |
| vs. | ) ) | Judge Wayne Andersen |
| CITY OF CHICAGO, *et al.*, | ) ) | Magistrate Judge Jeffrey Cole |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

The City of Chicago has moved for entry of an order barring the supplemental report of plaintiff's expert witness and has renewed its motion to strike his original report. The motion to bar is denied, thereby making the ancillary motion moot.

### I.
### INTRODUCTION AND FACTUAL BACKGROUND

The suit underlying this discovery dispute stems from the death of the plaintiff's son, Michael Walker, whom it is alleged was shot and killed during an altercation by defendant police officer, Duane Blackman. The suit is bottomed on 42 U.S.C. § 1983 and alleges various state law claims, including wrongful death. The City is involved as a result of plaintiff's *Monell* claims. In support of her case, plaintiff retained a police practices expert, Dennis Waller. His expert report was timely served on March 3, 2006, and the parties scheduled Mr. Waller's deposition for April 25, 2006.

The City did nothing for the next five weeks regarding Mr. Waller's report. Then, on April 10, 2006, counsel for the City requested that Mr. Waller amend his report by identifying, with citations, the complaint register ("CR") files to which he referred in the report. The CR files document various investigations into allegations of police misconduct. As part of discovery in this case, the City produced hundreds of such files as a "sample" of the Chicago Police Department's investigations into gun-related misconduct for the two-year period prior to the shooting of Michael Walker. Mr. Waller's initial report referred to the files generally, but not specifically and, given their volume, the City's concerns were understandable.

In a facsimile letter dated April 13, 2006, just three days after broaching the topic, the City demanded that the report be amended by the next day, Friday, April 14th. (*Defendant City of Chicago's Motion to Bar*, Ex. B, at 1). The demand was plainly unreasonable and impossible of fulfillment. Responding by facsimile letter that day, plaintiff explained that Mr. Waller was out of town and involved in another trial and would not be able to supplement his report until a week later, by April 21st. (Motion to Bar, Ex. B, at 2). Unsatisfied, on April 18th, the City filed a motion to strike all portions of Mr. Waller's initial report that related to the §1983 municipal liability policy and practice claims against the City.

The motion was, under any circumstances, precipitous. Given the background of the case and the history of the City's chronically late responses to the plaintiff's discovery requests, the motion was more than a bit cheeky. Between July 21, 2004 and May 12, 2006, the *plaintiff* was forced to file twelve motions to compel discovery, all of which were essentially granted and which involved delays on the part of the City. In no instance were fees sought despite the Seventh Circuit's admonition the "[t]he great operative principle of Rule 37(a)(4) is that the loser pays.'" *Rickels v. City of South Bend, Indiana*, 33

2

F.3d 785, 786 (7ᵗʰ Cir. 1994). Judge Shadur's comments in his award of fees in *Regional Transportation Authority v. Grumman Flexible Corp.*, 532 F.Supp. 665, 667 (N.D. Ill. 1982) could easily be applied to the City's response to the request of the plaintiff to allow Mr. Waller to complete his report immediately upon his return from his out-of-town engagement on April 21ˢᵗ:

> What is rather involved is the responsibility of a lawyer in dealing with his fellow lawyer. It should scarcely be necessary to repeat what every lawyer is expected to know and live by, as succinctly put in the Code of Professional Responsibility:
>
>> DR 7-101(a)--A lawyer shall not intentionally (1) fail to seek the lawful objectives of his client through reasonably available means permitted by law and the disciplinary rules . . . however, such "reasonably available means" do not include (A) refusing to accede to reasonable requests of opposing counsel which do not prejudice the rights of his client. . . . EC 7-38--A lawyer should be courteous to opposing counsel and should accede to reasonable requests regarding court proceedings, settings, continuances, waiver of procedural formalities, and similar matters which do not prejudice the rights of his client.

Essentially, the City's motion complained that Mr. Waller's report was deficient because he had failed "to cite, refer to, describe, analyze, discuss, or criticize *a single* [investigatory] *file.*" (*City of Chicago's Motion to Strike*, at 1-2). The City went on to identify those portions of the report where Mr. Waller failed to rely on any analysis of the CR files (*id.*, at 3-5), and where he simply referred to a quantity of files. (*Id.*, at 6-7). The City also cited several other instances where it felt Mr. Waller's opinions were merely conclusory, (*id.*, at 7-8), and thus that Mr. Waller's opinions were unsupported assertions lacking any evidentiary foundation. (*Id.* at 2).

At the hearing on the City's motion on April 19ᵗʰ, the parties agreed that Mr. Waller's impending April 25ᵗʰ deposition ought to be postponed given the issues concerning his expert report. (*Motion to Bar*, Ex. D, Hearing Transcript, at 45-47). When plaintiff's counsel related the events leading up to the

3

City's motion, it seemed to me that the motion was premature, given the City's willingness to have Mr. Waller supplement his report. (Hearing Transcript, at 49-50). I expressed the view that it thus made better sense not to decide the City's motion, directed as it was to a report that was going to be amended:

> ... but if [plaintiff's counsel] is going to provide you with a supplement, she promised she would do so in the next whenever, I think what we should do is wait to see what the supplement is.
>
> *     *     *
>
> If [the City's motion to strike] gets mooted by virtue of a supplement, so be it. And then simply reschedule the deposition. If it is not, then what you need to do is supplement your motion.

(Hearing Transcript, at 50-51). In the end, the City agreed that its motion need not be considered "[i]f there is an agreement to supplement and reasonable time for [] review" of the supplement prior to the deposition. (Hearing Transcript, at 54). Once those conditions were agreed to, I denied the motion to strike without prejudice. (Hearing Transcript, at 55). The City received the supplemental expert report, dated April 21, 2006, on April 24th. It filed the instant motion on May 1st.

Mr. Waller's original report was eleven pages in length; his supplemental report was seventeen. While the body of report now included some exemplary citations to the CR files, Mr. Waller took another path to specifying the evidence that supported his conclusions. There were two attachments to the report. One was labeled "CR Files – Walker v. Chicago, et al." It consisted of a twenty-page list of 323 complaint register numbers, and provided identifying information about each one. For each file, there were one or more categories of alleged flaws in each investigation. The second attachment was entitled "Ware v. City of Chicago"[1] and was comprised of approximately 80 complaint register and "U-file numbers" (apparently

---

[1] The City and plaintiff's counsel's firm are involved in another case, *Ware v. City of Chicago*, involving similar issues. They agreed to use the same discovery in order to obviate duplicate production of
(continued...)

4

another manner of designating a complaint), with identifying information provided about each one, and a two-page summary of certain features of these investigations. The purported flaws of each investigation were identified. In nearly every case, the investigations of the complaints cataloged in the attachments resulted in findings that the complaints were "unfounded" or "not sustained." Attachment B included some investigations that resulted in findings that the conduct of the police officers involved was justified.

The flaws in these investigations, according to Mr. Waller, included the failure to conduct a proper investigation, listing a known officer as an unidentified officer, and failing to sustain complaints where the officer's firearm was drawn under questionable circumstances. The supplemental report also added exposition to certain of Mr. Waller's opinions – with the result of what the City calls "broaden[ing], strengthen[ing], and deepen[ing] his original report." (*Motion to Bar*, at 10, 14). So much so that the City does not attack the quality of the supplemental report. Indeed, the City conceded at oral argument that it probably would not have moved to strike the report in its present form had it been filed in the first place. Instead, the City now contends that if the newly added provisions of the report are stricken, the remainder – the report in its original form – is inadequate. (*Motion to Bar*, at 1, 15).

The City is now essentially contending that although the purpose of Rule 26(e)(1) is to prevent ambush at trial, those portions of Mr. Waller's report that accomplish that goal must be stricken, leaving a report that did not comport with the Rule. The source of this odd argument is claimed to be found in Rule 26(e)(1), which imposes a "duty" on a party to supplement an expert's report "if a party learns that in some

---

[1](...continued)
the same documents. (*Plaintiff's Response*, Ex. D). Plaintiff's counsel employed Mr. Waller in both cases. The City mentions in a footnote that this violated the protective order entered in the *Ware* case. (*City of Chicago's Motion to Bar*, at 3 n.8). But as this assertion is unsupported and is a matter that can only be resolved in that litigation, it plays no role in this ruling.

5

material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Since the additional or corrective information was known to Mr. Waller before his original report, it is the City's contention that Rule 26(e)(1), *ex-proprio vigore,* prohibits any supplementation that employs that information. That leaves only the original inadequate report, which being inadequate, must be stricken. [2]

When I asked at oral argument whether I had discretion to allow what the City calls a late filing – especially since no date for the filing of dispositive motions or for the trial itself has been set – the City's lawyer sought to side-step the question. Ultimately, the City's internally inconsistent response was that I had discretion, but that it would be contrary to the command of Rule 26(e)(1). "'[D]iscretion denotes the absence of a hard and fast rule." *Langnes v. Green*, 282 U.S. 531, 541 (1931) and thus allows two decision-makers-- on virtually identical facts to arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *Compare United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995) *with United States v. Williams*, 81 F.3d 1434 (7th Cir. 1996). But it is a contradiction in terms to say that a judge has discretion to *violate* a statutory prohibition.

Judges have vast discretion in supervising discovery and in declining to impose discovery sanctions and exclude evidence. *See Crawford-El v. Britton,* 523 U.S. 574 (1998); *Commonwealth Insurance Co. v. Titan Tire Corp.,* 398 F.3d 879, 888 (7th Cir. 2004); *Salgado by Salgado v. General Motors Corp.,* 150 F.3d 735, 739 (7th Cir. 1998). Rule 26(a)(2)(C) provides that expert disclosures "shall be

---

[2] The City had no problem with agreeing to what would be under its current construction of Rule 26 a violation of the Rule when it insisted that Mr. Waller

6

made at the times and in the sequence directed by the Court." There is a preference in the federal system

that trials be determined on the merits. *Salgado by Salgado*, 150 F.3d at 739, and not on constructions

of the Federal Rules of Civil Procedure that operate needlessly in a given case to deprive a party of its right

to have a merits-based determination of a claim. *Cf., Torres v. Oakland Scavenger Co.*, 487 U.S. 312,

316 (1988). *See also* Rule 1, Federal Rules of Civil Procedure (the Rules are to be construed and

administered to secure "the just...determination of every action."). The City's construction of Rule 26(e)(1)

is inconsistent with that preference and with the broad discretion that Rule 26(a)(2)(C) invests in judges

to supervise discovery in the federal system.

# II.
# ANALYSIS
## A.
## The Plaintiff's Supplementation Of The Expert Report With Information Available When The Initial Report Was Presented Was Not Impermissible

Rule 26(a)(2)(B), Federal Rules of Civil Procedure, governs the format of reports disclosing expert

testimony, requiring that the disclosure of a witness retained to provide expert testimony must:

> be accompanied by a written report prepared and signed by the witness. The report shall
> contain a complete statement of all opinions to be expressed and the basis and reasons
> therefor; the data or other information considered by the witness in forming the opinions;
> any exhibits to be used as a summary of or support for the opinions; the qualifications of
> the witness, including a list of all publications authored by the witness within the preceding
> ten years; the compensation to be paid for the study and testimony; and a listing of any
> other cases in which the witness has testified as an expert at trial or by deposition within
> the preceding four years.

*See Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 714 (7th Cir. 2004); *Loeffel Steel Products, Inc. v.*

*Delta Brands, Inc.*, 387 F.Supp.2d 794, 818 (N.D.Ill. 2005). The report must be "'detailed and

complete.'" *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 741 n. 6 (7th

7

Cir.1998)(quoting Advisory Committee's note). Rule 26(a)(2)(C) provides that expert disclosures "shall be made at the times and in the sequence directed by the Court."

The City's objection is no longer that the Waller report is too laconic, but that it is too informative and is so because it utilized information that had been in plaintiff's possession when the original report was filed. This, the City says, is contrary to the (inflexible) command of Rule 26(e)(1), which imposes a "duty" on a party to supplement an expert's report "if a party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Essentially, the City contends that Mr. Waller had a fair and reasonable opportunity to review and analyze whatever information and documents he had when he prepared his initial report, and he should have gotten "it right the first time." (*Motion* at 2).

Exclusion of his report is said to be required by *Council 31 v. Ward*, No. 87-0356, 1995 WL 549022 (N.D.Ill. Sept. 12, 1995), where the court, in a single-page opinion, refused to allow the plaintiff's expert to file a report on what the City calls, "precisely these grounds." (*Id.* at 3). Properly read, *Council 31* bears no relationship to this case, either factually or analytically. Indeed, the opening sentence of *Council 31* reveals the substantial dissimilarity between that case and this: "The procedural posture of this case is that discovery has closed, the parties have exchanged several reports of their experts, and we have issued a ruling on cross-motions for summary judgment." 1995 WL 549022, *1.[3] The next two sentences are also revealing: "Apparently in response to our denial of summary judgment on their disparate impact

_____

[3] All of the cases cited by the City deal with disclosures that occurred very late in the proceedings.

8

claim. the plaintiffs want to submit a fifth report from their expert with the final pretrial order. They filed a motion for an extension of time to file the pre-trial order, on the grounds that their expert needed time to prepare a new report." It was undisputed that the report was substantively different than the expert's four earlier reports, used different data and analyses, and in effect changed the plaintiffs' theory of the case. If the report were allowed, the defendants would have been forced to have their expert review the new material and submit a new report as well, which would have resulted in a substantial expenditure of additional time.

The present case could scarcely be more dissimilar. Not one of the factors Judge Plunkett adverted to is present in this case: expert discovery, at least, has not closed; in fact, it was allowed to remain open so that the plaintiff could provide the City with a supplemental report. The only timing issue that arose between the parties concerned Mr. Waller's deposition. All that the City wanted was "an agreement to supplement and reasonable time [ ] to review" the "supplementation" before Mr. Waller's deposition. (Hearing Transcript. at 54, 55). There is no dispute that the City got exactly that. Here, the plaintiff has provided a single supplemental report, not multiple revisions, which were in response to an adverse summary judgment ruling, and Mr. Waller's report has not, unlike *Council 31*, "substantively alter[ed] the[] theory of the case." The supplement served "[s]imply to make [the] report better." (*Id.* at 14).

Ignoring these critical distinctions has enabled the City in its opening brief to draw the analogy between this case and *Council 31*. But this sort of approach to the reading of cases is delusive and is as "pointless" as ignoring potentially dispositive authority against one's position. *See Fred A. Smith Lumber*

9

*Company v. Edidin*, 845 F.2d 750, 753 (7th Cir. 1988); *Scholes v. Schroeder*, 744 F.Supp. 1419, 1422 (N.D. Ill. 1990)(Shadur, J.).

As the City points out in its reply brief, *Council 31* held that the attempted supplementation of the fourth expert report could not be based on Rule 26(e) since the supplementation was based on information that had long been in the possession of the plaintiff. 1995 WL 549022, *1. But "the language of an opinion is not always to be parsed as though we were dealing with the language of a statute." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979), and "[j]udges expect their pronunciamentos to be read in context. . . ." *Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005)(Posner, J.). *See also Cohens v. Virginia*, 19 U.S. 264, 399 (1821)(Marshall, C.J.); *Illinois v. Lidster*, 540 U.S. 419, 424 (2004).

Judge Plunkett was responding to the plaintiff's assertion that Rule 26(e) gave them the "*right* to file the new report." *Id.* at *1. (Emphasis supplied). He was not being asked to exercise his discretion. Judge Plunkett recognized that the Rule dealt with a party's "obligation," not with its rights, *id.*, and it was in that context that he said since none of the information in the fifth report was "obtained by additional discovery from the defendants since their expert prepared his fourth report, and in opposing this motion, they have not identified any newly acquired information," Rule 26(e) did not give the plaintiffs the "right" to file a fifth report. *Id.* at *2.

That this is the limited meaning to be accorded to *Council 31* is apparent when the text of Rule 26(e) and the cases interpreting it are considered. The Rule provides, in pertinent part:

> (e) Supplementation of Disclosures and Responses. A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under *a duty to supplement or correct* the disclosure or response to include information thereafter acquired if ordered by the court *or* in the following circumstances:

10

> (1) A party is under a *duty* to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.

(Emphasis supplied).

The Rule, by its plain terms, imposes duties on the parties; it does not purport to limit a court's discretion under Rule 26(a)(2)(C) to direct the "times and... the sequence" in which expert reports should be filed.[4] This reading is further reenforced by the concluding sentence of Rule 26(a)(2)(C) which provides that "[t]he parties shall supplement these disclosures [of expert testimony] when *required* under subdivision (e)(1). By mandating supplementation, Rule 26(e) seeks to prevent surprise at trial. Allowing, as a discretionary matter, the filing of a supplemental report that fully informs the recipient of the anticipated testimony of the expert accomplishes that very purpose. So long as that decision does not entail some greater harm to the opponent of the report, sound discretion would seem to counsel allowing the supplemental report to be filed. The City's construction of Rule 26(e) as a prohibition against supplementation of expert reports that rely on information that was already in the possession of the parties at the time of the supplementation disserves the desideratum of the Rule and effectively eliminates the discretion Rule 26(a)(2)(C) grants.

---

[4] The Federal Rules of Civil Procedure are to be accorded "their plain meaning... and generally with them, as with the statute, '[w]hen we find the terms... unambiguous, judicial inquiry is complete....'" *Pavelic & Leflore v. Marvel Entertainment Group*, 493 U.S. 120, 123 (1989).

Beyond this. Rule 26(e) sets out two occasions when a party is under a duty to supplement an expert report: (1) to include information thereafter acquired if ordered by the court, (2) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. Rule 26(e)(1). Rule 26(e)'s prerequisite that a supplement be the product of "thereafter acquired" information is separated by the disjunctive "or" from subsection 26(e)(1)'s articulation of a duty to supplement triggered by learning that information disclosed is incomplete or incorrect.

It is not *always* necessary, then, that the supplement be based on information acquired after the initial report was disclosed; it is enough that a party learn the expert report was incomplete or incorrect in some material aspect. As such, the rule sets forth two separate duties to supplement. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 570 (5th Cir. 1996)("Specifically, a party is required to supplement its expert disclosures if the court so orders *or* if 'the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.'"(emphasis supplied); *Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, No. 03-7713, 2005 WL 1300763, *2 (N.D.Ill. Feb. 22, 2005)(Moran, J.)("... supplemental disclosures ... are permitted when they are based on information acquired subsequent to the original disclosure, *or* a realization that the original disclosure was incomplete or incorrect."(emphasis supplied)); Rule 26(e), 1993 Advisory Committee Notes ("The obligation to supplement disclosures and discovery responses applies whenever a party learns that its prior disclosures or responses are in some material respect incomplete or incorrect.").

12

Here, the plaintiff was made aware that in the City's view the initial report was incomplete. Thus, the plaintiff provided a supplemental report. It is of no moment that the CR files employed in the report's supplementation had been in the plaintiff's possession at the time the plaintiff provided Mr. Waller's initial expert report. The fact that the City *requested* that this material be employed only serves to further undermine the argument it now advances.

But the CR files are not the City's only concern. The City also argues that Mr. Waller's supplemental report is improper because it employed other materials not identified in his initial report, including: the CALEA standards that "relate to officer-involved shooting investigations, Lou Reiter's *Law Enforcement Administrative Investigations: A Manual Guide*, the model policy for the "Investigation of Officer-Involved Shootings" promulgated by the International Association of Chiefs of Police," and the deposition testimony of Sergeant Lawrence Aiken, Commander Tina Skahill, First Deputy Superintendent Dana Starks, Office of Professional Standards Chief Investigator David Grossman, and Chicago City Alderman Isaac Carothers. (*Motion to Bar*, at 7).

The City is mistaken, however, in its inclusion of the Grossman, Skahill, and Carothers depositions in this list. In fact, Mr. Waller did cite these depositions in his original report. (*Motion to Bar*, Ex. A, at 3). In any event, the City asks that all portions of Mr. Waller's supplemental report that identify these sources of information or that offer opinions based on them should be stricken.

Mr. Waller's reference to these new materials is perhaps a bit different than his citation to the CR files. After all, while the City specifically requested reference to the CR files, it did not ask for inclusion of any other additional materials. The City's premise is simply that supplementation of an expert report is,

13

*semper ubique et ab omnibus*, limited to information acquired after the submission of the initial report. As already discussed in connection with the CR files, however, this is not a prerequisite for supplementation under Rule 26(e)(1).

*Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735 (7th Cir. 1998) does not support the City's argument; it demonstrates its invalidity. (Motion to Bar, at 8). Salgado had "failed to comply with the court's deadline for the submission of the reports of expert witnesses," despite having sought and received two eleventh-hour extensions of the discovery deadline. *Id.* at 737. Even then, the report was conclusory and noncompliant with Rule 26. Not surprisingly, the district court rejected counsel's explanation that he thought no more was required, and that he considered the report to be "preliminary." The district court concluded that Salgado's "noncompliance with Rule 26(a)" barred the report, and he denied plaintiff leave to file a supplemental report – especially since all the information needed was readily available prior to the court-ordered discovery deadlines. *Id.* at 737-38. On appeal, the Seventh Circuit affirmed the district court's discretionary decision to bar the report as a discovery sanction. The court's lengthy decision was not based on Rule 26(e)(1), but on the extraordinarily broad discretion possessed by the district courts in supervising discovery, in setting deadlines for the efficient management of its case log, and in enforcing sanctions that are proportionate to the discovery violations.

There is nothing novel about *Salgado*'s holding. It is simply an application of the federal court's consistent recognition of the importance of adherence to discovery deadlines and of the broad authority district courts have to deal with deviations from those deadlines. [5] *Salgado* stands not for the proposition

---

[5] *Raymond v. Ameritech Corp.*, 442 F.3d 600 (7th cir. 2006); *Harris v. Owens-Corning Fiberglass* (continued...)

that Rule 26(e)(1) is a rule of exclusion or a limitation on the district court's discretion to supervise expert discovery. Quite the contrary, it confirms that the breadth of a court's discretion can properly encompass the imposition of a sanction for noncompliance with expert report deadlines, even though it may result in "a young person, injured in infancy, [being] denied a merits decision. . . ." *Salgado* makes clear that there is a range of permissible options available to the court and indispensable to the efficient management of litigation. *Id.* at 743.

Like its discussion of *Council 31*, the City's reading of *Salgado* depends on a passage carefully excised from the broader and informative context in which it was made. But it is a commonplace that language in judicial opinions cannot be read in isolation. *See supra* at 10; *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.,* 414 F.3d 700, 705 (7th Cir.2005) ("Although we stated in *Panoramic* that damages would not adequately remedy a permanent loss of jobs... that language must be read in context."). Analysis by excision is no more conducive to accurate interpretation of judicial opinions than it is to the interpretation of anything else that is written, be it a statute, a contract, legislative history, or an argument of one's opponent. *See Textrom Lycoming Reciprocating Engine Division v. United Automobile Aerospace & Agricultural Implement Works,* 523 U.S. 653, 657 (1998); *Sunstrand Corp. v. Commissioner,* 17 F.3d 965, 967 (7th Cir. 1994); *In re: Handy Andy Home Improvement Centers* 144 F.3d 1125 (7th Cir, 1998) (Posner, J.); *In re Payne,* 431 F.3d 1055, 1058-59 (7th Cir. 2005)(Posner,

⁵(...continued)
*Corp.,* 102 F.3d 1429, 1433 (7th Cir.1996); *Reales v. Consolidated Rail Corp.,* 84 F.3d 993, 996 (7th Cir. 1996); *United States v. Golden Elevator, Inc.,* 27 F.3d 301, 302 (7th Cir. 1994). *See also Finwall v. City of Chicago,* 2006 WL 1491316 (N.D.Ill. May 31, 2006).

15

J.); Scalia, A Matter of Interpretation: Federal Courts and the Law, 135 (1997)("The principle determinant of meaning is context. . . ."); *United States v. Paceli*, 491 F.2d 1108, 1120 (2d Cir. 1974).

The question is whether I have the discretion to allow the plaintiff to file Mr. Waller's report even though it is not based on newly acquired information. I believe that I do, and neither *Salgado*, *Council 31*, nor Rule 26(e)(1) constricts that discretion. The City has disavowed untimeliness as a basis for striking the supplemental report – the basis of *Salgado* and *Council 31* – and the kind of flagrant disobedience of deadlines that is the hallmark of those cases is not present here. The City will have ample time to deal with Mr. Waller's report and will suffer no cognizable prejudice if it is allowed to be filed.

## B.
## There Is No Inflexible Rule Of Civil Procedure
## That Prohibits Mr. Waller's Supplemental Report

The City also argues that it was impermissible under the Federal Rules of Civil Procedure for the plaintiff to use supplementation of the expert report as an opportunity to improve upon the initial expert report. The relevant authorities do not support the argument. For example, in *Wilson v. Sundstrand Corp.*, Nos. 99-6944, 99-6946, 2003 WL 22012673 (N.D.Ill. Aug. 25, 2003), the court held that supplementation of an expert report was proper even if it was done as a direct or indirect result of the fact that opposing counsel had pursued the subject of the supplementation at the expert's deposition. 2003 WL 22012673, *7-8. Similarly, in *Confederated Tribes of Siletz Indians v. Weyerhauser Co.*, No. CV 00-1693-PA, 2003 WL 23715981 (D.Ore. Jan. 21, 2003), the court allowed supplemental expert testimony that was disclosed, much as Mr. Waller's supplemental report was here, in direct response to opposing counsel's challenges to the original expert report. The court found no basis to exclude the report

16

"simply because plaintiffs failed to anticipate the need for it until the defect was pointed out by their opponent." 2003 WL 23715981, at *2. So here, where the plaintiff learned its initial expert report might be incomplete under Rule 26(e)(1) as a result of the City's challenge to it, the duty to supplement was triggered. And as the parties agreed that it could be supplemented in any event, there is no reason to bar Mr. Waller's supplemental report.

That Mr. Waller went beyond the CR files in amending and improving upon his report ought not to have surprised the City. Certainly, at the hearing on the City's motion, the discussion contemplated supplementation beyond simply citation to CR files. (Hearing Transcript, at 57-61). While the plaintiff thought the initial report was satisfactory – which ought not to have been a surprising stance for an advocate, as I explained (*Id.* at 51) – it was clear from the exchange in court that day that all the perceived deficiencies of the original report would be taken into consideration (*Id.* at 57), and that plaintiff would try to "bulk" the report up in order to avoid a second motion from the City. (*Id.* at 58). Indeed, counsel for the City agreed that the City's motion to strike might be "mooted" by the plaintiff's supplemental report. (*Id.* at 51). The only way that could occur would be if the supplemental report addressed all the deficiencies the City claimed were a part of the initial report. So supplementation beyond mere citation to CR files was clearly contemplated by both sides. The only concern with the supplementation that the City expressed was whether it would receive it in sufficient time to review it prior to Mr. Waller's deposition, which was awaiting scheduling until his report was promulgated. As such, the supplementation is not inappropriate because it was based on information available when the initial report was produced, or because it "bulked" up or improved upon the original version.

17

While the City contends that case law forbids the "bulking up" of expert reports, cases such as *Beller ex rel. Beller v. United States*, 221 F.R.D. 689 (D. N.M. 2003), *Minebea Co., Ltd. v. Papst*, 231 F.R.D. 3 (D.D.C. 2005), and *Solaia Technology LLC v. ArvinMeritor, Inc.*, 361 F.Supp.2d 797 (N.D.Ill. 2005), don't support the contention. (*Motion to Bar*, at 3). All three cases involved supplemental reports that were filed after discovery deadlines had passed. In *Beller*, the "supplemental expert report was submitted long after the deadline imposed by the Court and after discovery was closed." 221 F.R.D. at 693. The report in *Solaia Technology* also came after the court-ordered deadline for the close of expert discovery. 361 F.Supp.2d at 806. Worse still, in *Minebea*, the supplemental report was filed *one week into trial*. 231 F.R.D. at 5.

Each of these cases was decided on the issue of untimeliness and violation of deadlines, not on the basis of the information being available prior to the report and thus barred by Rule 26. As the City concedes. the timeliness of the plaintiff's supplemental report is not an issue here—yet the issue of timeliness appears in the cases on which the City relies. Moreover, in all three cases, the supplemental reports advanced "new" opinions. The supplemental report in *Beller* was "significantly different" from the original report and actually altered the theory of the case. 221 F.R.D. at 695. In *Minebea*, the supplemental report added four completely new sections of opinions. 231 F.R.D. at 5. And finally, in *Solaia Technology*, the supplemental report "contained newly disclosed opinions, certain of which contradict previously stated opinions." 361 F.Supp.2d at 804.

It is no surprise that supplemental expert opinions that threaten to belatedly send the case on a wholly different tack are excluded. *See Point Prods. A.G. v. Sony Music Entm't, Inc.*, 2004 WL 345551,

18

*9-*10 (S.D.N.Y. Feb. 23, 2004) (striking expert affidavit as untimely where affidavit "expound[ed] a wholly new and complex approach designed to fill a significant and logical gap in the first [expert] report"); *Stein v. Foamex Int'l, Inc.*, No. 00-2356, 2001 WL 936566, *6-*7 (E.D.Pa. Aug. 15, 2001) (striking expert affidavit only where opinions contradicted those in expert's report and "materially alter[ed] his intended expert testimony at trial"); *Baker v. Indian Prairie Community Unit, School Dist. 204*, No. 96-3927, 1999 WL 988799, *2 (N.D.Ill. Oct. 27, 1999)(striking reports containing "new conclusions which d[id] not merely correct or complete prior opinions").

It should be noted that at least in one instance, a supplemental report espousing an entirely new opinion was found appropriate under Rule 26(e)(1) as long as it was timely. *Minuteman Intern., Inc. v. Nilfisk-Advance*, No. 03-223, 2004 WL 2533626, *1-2 (N.D.Ill. Sept. 28, 2004). But neither timeliness nor new theories are of concern here, as the City concedes that Mr. Waller's opinions were not changed but simply "bulked up."

## B.

### The City Will Not Be Prejudiced By The Filing Of Mr. Waller's Supplemental Report

We come then to the City's last argument, which it denominates as a "classic double bind":

> On the one hand, if [the City] does not challenge Waller's patently deficient original report, it risks being prepared inadequately for his deposition, with the possibility of being ambushed in that setting, and thus thwarted in its ability to develop an effective cross-examination of Waller at trial. On the other hand, if any challenge to an expert report serves as nothing more than a court-endorsed guide to plaintiff's expert as to how to get it right on his next try, the City has no incentive to pose such a challenge.

(*Reply*, at 8).

19

The problem with the argument is that its premises are faulty. Even a superficial analysis reveals that taking action in the face of a report believed to be non-compliant with the rules is generally risk-free and could only benefit the City: If no motion were filed, the City would have been stuck with an inadequate report, with the potential that it could be "ambushed" (the City's word) at trial. If it filed the motion, the City could lose. But that would leave it in no worse position than if no motion had been made. If the motion were successful, either the report would be stricken and that would be the end of the matter or the court could permit a reworking of the report. Either way the City would be better off than had it done nothing. The benefit of a ruling striking the report is obvious. The benefit of a ruling allowing amendments to the report is the City would have a report that was compliant with Rule 26 and would prevent the ambush the City contends animated the initial motion to strike. It is thus difficult to accept the City's present contention that it has been penalized for making the motion by now being "stuck" – to use the City's words – with a report that satisfies Rule 26. That is not a harm; it is a benefit that eliminates the very evil that prompted the City to take action in the first place.

## CONCLUSION

In sum, I have discretion to allow the filing of Mr. Waller's supplemental report, and under the circumstances presented by this case, I believe it is not an abuse of that discretion to allow it to be filed. *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir.2000) (7th Cir.1998) (no indication opposing party had been harmed or unfairly surprised). For the foregoing reasons, the City's motion for an order barring the supplemental report of plaintiff's expert witness, and renewing its motion to strike the expert witness's

20

original report [# 90] is DENIED.

**ENTERED:** _____
                UNITED STATES MAGISTRATE JUDGE

**DATE:** 7/10/06